No. 24-70004

JOHN ALLEN RUBIO,

*Petitioner–Appellant,*

v.

BOBBY LUMPKIN, Director,
Texas Department of Criminal Justice,
Correctional Institutions Division,

*Respondent–Appellee.*

On Appeal from the United States District Court for the
Southern District of Texas, Brownsville Division, No. 1:18-cv-00088

## RESPONSE IN OPPOSITION TO APPLICATION
## FOR CERTIFICATE OF APPEALABILITY

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

JOSH RENO
Deputy Attorney General
For Criminal Justice

EDWARD L. MARSHALL
Chief, Criminal Appeals Division

ELLEN STEWART-KLEIN
Assistant Attorney General
*Counsel of Record*

P.O. Box 12548, Capitol Station
Austin, Texas 78711
(512) 936-1400
ellen.stewart-
klein@oag.texas.gov

*Counsel for Respondent–Appellee*

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

*Respondent–Appellee*
> Bobby Lumpkin, Director
> TEXAS DEPARTMENT OF CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION

*Counsel for Respondent–Appellee*
> Ellen Stewart-Klein, Assistant Attorney General
> OFFICE OF THE ATTORNEY GENERAL OF TEXAS

*Petitioner–Appellant*
> John Allen Rubio

*Counsel for Petitioner–Appellant*
> Lee Kovarsky
> PHILLIPS BLACK, INC
>
> Jeremy Schepers, Derek VerHagen, Claire Davis
> OFFICE OF THE FEDERAL PUBLIC DEFENDER, NORTHERN DISTRICT OF TEXAS

> s/ Ellen Stewart-Klein
> ELLEN STEWART-KLEIN
> Assistant Attorney General
> *Counsel of Record*
> *Counsel for Respondent–Appellee*

# STATEMENT REGARDING ORAL ARGUMENT

The parties' briefs adequately lay out the facts and legal arguments, and the decisional process would not be significantly aided by oral argument.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ........................................... i

STATEMENT REGARDING ORAL ARGUMENT ................................ ii

TABLE OF CONTENTS ........................................................................ iii

TABLE OF AUTHORITIES ..................................................................... v

INTRODUCTION .................................................................................... 1

STATEMENT OF THE ISSUES ............................................................... 1

STATEMENT OF THE CASE ................................................................... 2

I.   FACTS OF THE CRIME ................................................................. 2

II.  COURSE OF STATE AND FEDERAL PROCEEDINGS .................. 4

SUMMARY OF THE ARGUMENT ......................................................... 7

ARGUMENT ........................................................................................... 8

I.   THE STANDARD OF REVIEW ...................................................... 8

II.  RUBIO IS NOT ENTITLED TO A COA ON HIS INEFFECTIVE
     ASSISTANCE OF TRIAL COUNSEL (IATC) CLAIM FOR
     FAILURE TO INVESTIGATE AND PRESENT HIS PRE-NATAL
     EXPOSURE TO ALCOHOL........................................................... 10

     A.   Standard of Review ............................................................. 11

     B.   Rubio's underlying IATC claim is not debatable among
          reasoned jurists. .................................................................. 14

          1.   The lower court properly found that Rubio did not
               demonstrate trial counsel were deficient. ................... 14

          2.   The lower court also properly found that Rubio failed to
               demonstrate the prejudice prong. ............................... 18

     C.   Rubio fails to demonstrate that reasonable jurists would
          debate the lower court's application of deference under 28
          U.S.C. §2254(d) ................................................................... 20

1. The lower court properly determined the state courts did not make unreasonable factual determinations .......... 22

2. The lower court also properly found that Rubio failed to demonstrate the state courts unreasonably applied clearly established federal law. ................................... 24

III. RUBIO IS NOT ENTITLED TO A COA ON HIS PROCEDURALLY DEFAULTED IATC CLAIM THAT COUNSEL FAILED TO INVESTIGATE AND PREPARE FOR HIS INSANITY DEFENSE. ................................................................................. 27

A. Rubio's IATC claim for failing to investigate and present an insanity defense regarding expert preparation is both defaulted and without merit. ............................... 28

1. Deficient Performance ................................. 30

2. Prejudice ..................................................... 32

3. Procedural Default ....................................... 33

B. Rubio's IATC claim for failing to investigate and present an insanity defense regarding record review is both defaulted and without merit. ................................. 34

1. Deficient Performance ................................. 35

2. Prejudice ..................................................... 37

3. Procedural Default ....................................... 39

IV. RUBIO IS NOT ENTITLED TO A COA ON HIS PROCEDURALLY DEFAULTED *NAPUE* CLAIM. ..................................................... 40

CONCLUSION .................................................................... 45

CERTIFICATE OF SERVICE .............................................. 47

CERTIFICATE OF COMPLIANCE ...................................... 48

ELECTRONIC CASE FILING CERTIFICATIONS .............. 48

# TABLE OF AUTHORITIES

**Cases**  **Page**

*Andrus v. Texas*, 590 U.S. 806 (2020) ...................................................... 19

*Black v. Collins*, 962 F.2d 394 (5th Cir. 1992) ........................................ 12

*Bousley v. U.S.*, 523 U.S. 614 (1998) ...................................................... 41

*Brecht v. Abrahamson*, 507 U.S. 619 (1993) .................................... 21, 22

*Brown v. Davenport*, 596 U.S. 118 (2022) ........................................ 21, 22

*Burt v. Titlow*, 571 U.S. 12 (2013) ......................................................... 14

*Chambers v. Johnson*, 218 F.3d 360 (5th Cir. 2000) ............................. 43

*Crawford v. Cain*, 68 F.4th 273 (5th Cir.) ............................................. 42

*Cullen v. Pinholster*, 563 U.S. 170 (2011) ....................................... 10, 13

*Dunn v. Reeves*, 594 U.S. 731 (2021) ..................................................... 14

*Garza v. Stephens*, 738 F.3d 669 (5th Cir. 2013) .................................. 29

*Giglio v. United States*, 405 U.S. 150 (1972) .................................. 43, 45

*Gonzales v. Stephens*, 606 F. App'x 767 (5th Cir. 2015) .................. 17, 24

*Hardy v. Cross*, 132 S. Ct. 490 (2011) .................................................... 9

*Harrington v. Richter*, 562 U.S. 86 (2011) ......................... 10, 13, 14, 23

*Knowles v. Mirzayance*, 556 U.S. 111 (2009) ....................................... 13

*Loyd v. Whitley*, 977 F.2d 149 (5th Cir. 1992) ...................................... 11

*Martinez v. Ryan*, 566 U.S. 1 (2012), Id. .............................................. 29

*McGee v. Lumpkin*, No. 22-10188, 2022 WL 18935854 (5th Cir. Sept. 8, 2022) ..................................................................................................... 41

*Miller-El v. Cockrell*, 537 U.S. 322 (2003) ......................................... 8, 9

v

*Moore v. Johnson*, 194 F.3d 586 (5th Cir. 1999) ............................. 12, 37

*Napue v. Illinois*, 360 U.S. 264 (1959) ......................................... 1

*Reed v. Quarterman*, 504 F.3d 465 (5th Cir. 2007) ............................ 43

*Riley v. Cockrell*, 339 F.3d 308 (5th Cir. 2003) ................................ 12

*Roberts v. Thaler*, 681 F.3d 597 (5th Cir. 2012) ............................... 41

*Rocha v. Thaler*, 619 F.3d 387 (5th Cir.) ...................................... 42

*Rompilla v. Beard*, 545 U.S. 374 (2005) .............................. 12, 18, 19

*Rubio v. State*, 241 S.W.3d 1 (Tex. Crim. App. 2007) .......................... 4

*Rubio v. State*, No. AP-76,383, 2012 WL 4833809 (Tex. Crim. App. Oct. 10, 2012) ....................................................................... 5

*Schaetzle v. Cockrell*, 343 F.3d 440 (5th Cir. 2003) ........................... 13

*Shinn v. Martinez Ramirez*, 596 U.S. 366 (2022) ........................ *passim*

*Shoop v. Twyford*, 596 U.S. 811 (2022) ........................................ 10

*Slack v. McDaniel*, 529 U.S. 473 (2000) ..................................... 9, 27

*Strickland v. Washington*, 466 U.S. 668 (1984) .............................. 11, 12

*Wiggins v. Smith*, 539 U.S. 510 (2003) ........................................ 12

*Wilson v. Sellers*, 584 U.S. 122 (2018) ....................................... 25

*Wooten v. Lumpkin*, 113 F.4th 560 (5th Cir. 2024) ........................ 21, 22

**Statutes**

28 U.S.C. § 2254(d) ...................................................... *passim*

**INTRODUCTION**

This is a federal habeas corpus appeal brought by Petitioner-Appellant, John Allen Rubio, a death-sentenced Texas inmate. Rubio seeks a certificate of appealability (COA) from the lower court's denial of federal habeas relief. But, as shown below, the lower court acted according to established law and did not err. A COA should be denied.

**STATEMENT OF THE ISSUES**

Rubio alleges the following claims:

1. This Court should grant a COA on Rubio's claim that his trial counsel was ineffective for failure to reasonably investigate Rubio's prenatal exposure to alcohol.

2. This Court should grant a COA on Rubio's claim that his trial counsel was ineffective for failure to investigate and prepare for his insanity defense.

3. This Court should grant a COA on Rubio's claim the State violated his rights under *Napue v. Illinois*, 360 U.S. 264 (1959).

# STATEMENT OF THE CASE

## I.    Facts of the Crime

On state habeas, the Texas Court of Criminal Appeals (TCCA)

provided the following summary of the facts of Rubio's capital crime:

> [Rubio]'s common[-]law wife and co-defendant, Angela Camacho, testified at his second trial that she had three children: Julissa Quesada, who was three years and one month old; John Rubio, who was one year and two months old; and Mary Jane Rubio, who was about two months old. [Rubio] was only the biological father of Mary Jane, but he acted as a father to all three children. In 2002, Child Protective Services ("CPS") removed Julissa and John from the home. The couple was ordered to find suitable housing and take parenting classes, and [Rubio] was ordered to obtain employment and submit to periodic drug testing. The couple eventually complied. However, shortly after CPS returned the children, [Rubio] lost his job and resumed his abuse of spray paint and other substances. At one point when Camacho was pregnant with Mary Jane, [Rubio] asked her what she would do if he killed the children. She thought he was "playing."
>
> Camacho testified that they received a notice informing them that Julissa's food stamp benefits would be terminated because of a problem with her social security number. On the day before the offense, the family went to the hospital to get a copy of Julissa's records, but the hospital did not provide the records. Their rent was due the next day and they did not have enough money to pay it.
>
> Camacho stated that, in the early morning hours, [Rubio] nailed the back door shut. He killed their pet hamsters with a hammer and bleach. He began talking about the anti-Christ and he told Camacho that he was one of the seven good men. He told her that the children were possessed and that he was

going to kill them. He ordered her to go into the bathroom. She complied. He then decapitated their two-month-old baby, Mary Jane, and screamed for Camacho. Camacho came out of the bathroom and saw that [Rubio] was trying to stab and decapitate Julissa, but the child was screaming and struggling. [Rubio] told Camacho to hold her legs. Camacho held her legs while [Rubio] stabbed and decapitated her. [Rubio] then washed the girls' bodies in the kitchen sink and put them into trash bags. He put the girls' heads into a bucket.

Camacho recalled that, when [Rubio] came out of the kitchen, he told her to have sex with him, stating that he would call his friends to come over and rape her and then he would kill himself if she did not comply. They had sexual intercourse and took a shower together. Baby John was asleep in his crib during these events. When the baby woke up crying, Camacho went to the bedroom to change his diaper. [Rubio] came into the room and told her that John was possessed. She told [Rubio] "no," and she picked John up and held him. [Rubio] grabbed the baby from her, took him into the kitchen, and stabbed and decapitated him. When Camacho saw John's decapitated body on the kitchen floor, she asked [Rubio] to kill her. He tried unsuccessfully to break her neck, then he placed John's body onto a bed, and he put John's head into a plastic bag.

The couple then walked to the store and bought milk. [Rubio] told Camacho that they would go to prison forever. They discussed plans to bury the children's bodies and flee to Mexico. While they were sitting in the apartment, [Rubio]'s brother and a friend arrived for a visit and saw the boy's body on the bed. The visitors left the apartment screaming and then flagged down a passing police office to report the crime.

When the investigating officer arrived at [Rubio] and Camacho's home, [Rubio] admitted him into the apartment. [Rubio] gestured toward the back of the apartment. The officer testified that, as he moved toward the back of the

apartment, he saw the headless body of a child, which he at first mistook to be a plastic doll. He asked, "What happened here?" [Rubio] then stood, held out his hands together towards the officer, and said, "arrest me." Other officers arrived and eventually found the decapitated bodies of all three children. [Rubio] was taken to the police station, where he confessed to killing the three children, stating that he believed that the children were possessed by the spirit of his dead grandmother.

In Camacho's second statement to police, she told a different version of these events. In this statement, Camacho said that the reason that she and [Rubio] decided to kill the children was because of money problems and not because they believed that the children were possessed. She said that they decided that it was better for the children to die than for them to suffer. At [Rubio]'s second trial, Camacho admitted making this statement to police, but insisted that it was not true and that the officers tricked her by telling her that [Rubio] had changed his story.

*Ex parte Rubio*, No. WR-65,784-02 &-04, 2018 WL 2329302, at *1–2 (Tex. Crim. App. May 23, 2018); ROA.43193–96.

## II.     Course of State and Federal Proceedings

Rubio was first convicted and sentenced to death in 2003, but the TCCA reversed the conviction, holding that the trial court erred during the guilt/innocence phase of trial by admitting the out-of-court statements of Rubio's common-law wife and accomplice, Angela Camacho. *Rubio v. State*, 241 S.W.3d 1, 11 (Tex. Crim. App. 2007). After being retried in July 2010, Rubio was again convicted and sentenced to

death for capital murder in a judgment entered on August 2, 2010. CR[1] 2382–92; ROA.40496–506; *Id.* The TCCA affirmed Rubio's conviction on direct appeal. *Rubio v. State*, No. AP-76,383, 2012 WL 4833809 (Tex. Crim. App. Oct. 10, 2012) (not designated for publication), *cert. denied* 571 U.S. 852 (2013); ROA.12734–12770.

Rubio filed a state application for writ of habeas corpus raising six claims for relief. SHCR-02 at 2–125; ROA.43486–609.[2] After holding an evidentiary hearing, the trial court entered findings of fact and conclusions of law recommending that relief be denied. EHRR at 1–203; ROA.3373–41528; Supp. SHCR-02 (Writ II) at 1–15; ROA.44835–49. The TCCA issued an order adopting some of the trial court's findings and conclusions, providing additional reasoning related to some of Rubio's claims, and denying habeas relief based on the adopted findings and its

---

[1]    "CR" refers to the clerk's record of pleadings and documents filed during Rubio's capital-murder trial in cause number 03-CR-457-B. "RR" refers to the reporter's record of the testimony from Rubio's retrial. "SHCR" refers to the Clerk's Record of Rubio's habeas pleadings, which is followed by "-#" to indicate which proceeding and may also include a "Supp" or other notation to indicate where in the records to find the document. "EHRR" refers to the state habeas reporter's record of the evidentiary hearing in the -02 proceeding.

[2]    Rubio's first state habeas application challenged Rubio's original conviction.

own review.[3] *Ex parte Rubio*, WR-65,784-02, 2018 WL 2329302, at *4. Additionally, the TCCA dismissed Rubio's subsequent application as an abuse of the writ. *Id.* at *4–5.

Rubio then filed a suggestion for reconsideration with the TCCA. ECF No. 17-1 at 1–5; ROA.167–69. The Director and Rubio agreed to a specified timeline where Rubio would file a "shell petition" after the TCCA's disposition of the suggestion for reconsideration, followed by an amended petition. *Id.* The Director agreed that if Rubio abided by the specified timelines, the Director would expressly waive the statute of limitations defense with respect to all claims appearing in and relating back to those appearing in Rubio's shell petition. *Id.*; Supplemental Appendix (Supp. App.), ECF No. 24-1 at 1–2; ROA.456–57. Rubio eventually filed his amended petition in the lower court. Pet., ECF No. 24; ROA279–454. He later filed a motion to stay the proceedings, which the court granted. Mot. Stay, ECF No. 42; ROA.1634–59; Ord., ECF No. 53; ROA.1755–58. Rubio returned to state court and filed a subsequent writ application which the TCCA found "failed to satisfy the

---

[3]     The TCCA rejected finding twenty-two and the first paragraph of finding fifty-four. *Ex parte Rubio*, No. WR-65,784-02, 2018 WL 2329302, at *4 (Tex. Crim. App. May 23, 2018) (not designated for publication).

requirements of Article 11.071, § 5(a)" and thus dismissed as an abuse of the writ "without considering the claims' merits." *Ex parte Rubio*, No. WR-65,784-05, 2022 WL 221485, at *3 (Tex. Crim. App. Jan. 26, 2022) (not designated for publication). Rubio then returned to district court and filed a second amended petition. ECF No. 61; ROA.1813–912. After the Director's response, the court below denied relief and refused to issue a COA. F.J., ECF No. 95; ROA.2595; Ord. & Op., ECF No. 94; ROA.2498 – 594. Rubio now requests a COA from this Court.

## SUMMARY OF THE ARGUMENT

Rubio seeks a COA on three claims, two of which were barred as procedurally defaulted by the lower court. First, Rubio argues that the lower court's denial of his ineffective assistance of counsel claim based on trial counsel's failure to reasonably investigate his prenatal exposure to alcohol is debatable among reasoned jurists. But the lower court thoroughly and properly rejected this claim. The court found that Rubio failed to prove either deficient performance or prejudice. The court also gave a detailed account of how the record supports trial counsel's actions. It found trial counsel reasonably relied on his multiple experts. Rubio fails to demonstrate this conclusion is debatable among reasoned jurists.

Rubio also asks for a COA on another ineffective assistance of trial counsel claim regarding preparation for his insanity defense. But this claim was defaulted by Rubio's failure to properly present the claim on state habeas. Although Rubio claimed that he could overcome the default based on the faulty performance of his state habeas counsel, the lower court disagreed finding the underlying claim to be without merit and to be unsubstantial.

Finally, Rubio seeks a COA on his defaulted claim that his constitutional rights were violated by the "false testimony" of the State's expert witness. But as explained below, the claim is not only inarguably defaulted but without merit as Rubio cannot demonstrate the expert's testimony was demonstrably false.

For these reasons, Rubio is unable to demonstrate that jurists of reason would debate the lower court's denial or barring of his claims. A COA should be denied.

## ARGUMENT

### I. The Standard of Review

A COA is necessary to appeal the denial of federal habeas relief, § 2253(c)(1), and the requirement is jurisdictional. *Miller-El v. Cockrell*,

537 U.S. 322, 335–36 (2003). For claims denied on the merits, an inmate must make "a substantial showing of the denial of a constitutional right," § 2253(c)(2), which requires that "reasonable jurists could debate whether (or, for that matter, agree that)" the court below should have resolved the claims in a different manner, or that the claims "deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 336. For claims disposed of on procedural grounds the inmate must show "that jurists of reason would find it debatable whether the petition states a valid claim of a denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

When an inmate seeks a COA on a claim denied on the merits by a state court, it must be reviewed in light of § 2254(d). *Miller-El*, 537 U.S. at 341. This section, as amended by the Antiterrorism Effective Death Penalty Act (AEDPA), "imposes a highly deferential standard of review for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." *Hardy v. Cross*, 132 S. Ct. 490, 491 (2011) (per curiam) (internal quotation marks omitted). Review is "limited to the record that was before the state court" and "focuses on

what a state court knew and did." *Cullen v. Pinholster*, 563 U.S. 170, 181–82 (2011). "[T]his standard is difficult to meet . . . because it was meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). Moreover, findings of fact made by the state court are presumed correct unless rebutted by clear and convincing evidence. § 2254(e)(1). Finally, federal courts generally cannot "develop and consider new evidence." *Shoop v. Twyford*, 596 U.S. 811, 819 (2022).

## II. Rubio Is Not Entitled to a COA On His Ineffective Assistance of Trial Counsel (IATC) Claim for Failure to Investigate and Present his Pre-Natal Exposure to Alcohol.

Rubio first asks this Court for a COA on his IATC claim that trial counsel failed to investigate and present evidence of pre-natal exposure to alcohol and his later diagnosis of FASD (Fetal Alcohol Spectrum Disorder). Mot. at 12–43. First, he asserts that reasonable jurists could debate the underlying merit of this claim. *Id.* at 12-27. Next, he argues that reasonable jurists could debate whether Rubio met the burdens of 28 U.S.C. § 2254(d). *Id.* at 27–43. But the lower court thoroughly and properly rejected this claim and Rubio fails to show reasonable jurists would think otherwise.

## A.    Standard of Review

The familiar standard by which a claim of ineffective assistance of counsel is weighed is set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In order to establish that his counsel's performance was constitutionally deficient, a convicted defendant must show that counsel's representation "fell below an objective standard of reasonableness." *Id.* at 687–88. In so doing, a convicted defendant must overcome a strong presumption that the conduct of his trial counsel fell within a wide range of reasonable professional assistance. *Id.* at 689; *Loyd v. Whitley*, 977 F.2d 149, 156 (5th Cir. 1992). "[A]ny deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." *Strickland,* 466 U.S. at 692. In order to establish that he has sustained prejudice, the convicted defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine the confidence in the outcome." *Id.* at 694; *Loyd*, 977 F.2d at 159. Because a convicted defendant must satisfy both prongs of the *Strickland* test, a failure to establish either deficient performance

or prejudice makes it unnecessary to examine the other prong. 466 U.S. at 697; *Black v. Collins*, 962 F.2d 394, 401 (5th Cir. 1992).

"Mitigating evidence that illustrates a defendant's character or personal history embodies a constitutionally important role in the process of individualized sentencing, and in the ultimate determination of whether the death penalty is an appropriate punishment." *Riley v. Cockrell*, 339 F.3d 308, 316 (5th Cir. 2003) (citing *Moore v. Johnson*, 194 F.3d 586, 612 (5th Cir. 1999)). But "*Strickland* does not require counsel to investigate every conceivable line of mitigating evidence no matter how unlikely the effort would be to assist the defendant at sentencing." *Wiggins v. Smith*, 539 U.S. 510, 533 (2003). "[R]easonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste." *Rompilla v. Beard*, 545 U.S. 374, 383 (2005). To establish prejudice Rubio must show that "there is a reasonable probability that, absent the errors, the sentencer . . . would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." *Strickland*, 466 U.S. at 695.

But in the district court because Rubio sought a federal writ of habeas corpus based on an IATC claim raised in the state court, the

standard is more arduous. Instead, "the test is whether the state court's decision–that [petitioner] did not make the *Strickland* showing–was contrary to, or an unreasonable application of, the standards, provided by the clearly established federal law (*Strickland*), for succeeding on his [IATC] claim." *Schaetzle v. Cockrell*, 343 F.3d 440, 444 (5th Cir. 2003); *see also Richter,* 562 U.S. at 101. Thus, a federal court's review of a state court's resolution of an IATC claim under AEDPA is "doubly deferential," *Pinholster*, 563 U.S. at 190 (quoting *Knowles v. Mirzayance*, 556 U.S. 111 (2009)), because the question is "whether the state courts application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S. at 101. Importantly, "[t]his is different from asking whether defense counsel's performance fell below *Strickland's* standard," because the "state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id*. Consequently, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. at 102. Rather, to obtain habeas relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended

in existing law beyond any possibility for fairminded disagreement." *Id.* at 102–03.

As the Supreme Court reiterated, in conducting a federal habeas review, this Court "owe[s] deference to both [Rubio's] counsel *and* the state court." *Dunn v. Reeves*, 594 U.S. 731, 738 (2021) (emphasis in original). The Court may only grant relief if counsel "took an approach that no competent lawyer would have chosen." *Id.* (citing *Burt v. Titlow*, 571 U.S. 12, 2–23 (2013)). "Or, in more concrete terms, a federal court may grant relief only if every fairminded jurist would agree that every reasonable lawyer would have made a different decision. *Id.* at 2411 (cleaned up) (emphasis in original).

## B. Rubio's underlying IATC claim is not debatable among reasoned jurists.

### 1. The lower court properly found that Rubio did not demonstrate trial counsel were deficient.

In dealing with the alleged underlying merit of Rubio's IATC claim regarding FASD, the lower court found that counsel did not perform deficiently:

> The record contains substantial evidence that Rubio's trial counsel appreciated the need to investigate the possibility that Rubio suffered from FASD. Throughout the preparations for the trial, Rubio's counsel sought and reviewed substantial

> information relevant to FASD, primarily in the form of
> evaluations by experts.

ROA.2524. But Rubio rejects this finding arguing that trial counsel failed

to explore FASD despite the red flags they encountered based on the

erroneous belief that FASD entailed facial dysmorphia. Mot. at 13–21. To

support his argument Rubio relies on the professional norms in place at

the time of trial and explains FASD. *Id*. at13–17. He then details the red

flags that counsel allegedly missed: 1) Rubio's prior trial; 2) the

investigation leading up to trial; 3) the competency hearing before trial.

*Id*. at 17–20. He then faults counsel for not seeking experts with FASD

expertise and failing to ask existing experts to evaluate Rubio for FASD.

*Id*. at 20. Then Rubio cites to testimony from one of his lawyers that

admitted the FASD inquiry was abandoned as a direct result of his false

layperson sense that all FASDs required extreme dysmorphia. *Id*. (citing

ROA.3539–40).

But in his briefing Rubio does not refute the district court's

summary of the experts retained by trial counsel. Relying on the state

habeas record, the court found that before trial, counsel identified Dr.

John Matthew Fabian as a retained expert who would offer opinions at

trial regarding how the "pre-natal alcohol abuse" by Rubio's mother led

to impairments. ROA.2524. And although there is no indication that Dr. Fabian expressly considered or rejected FASD, he conducted a forensic psychological evaluation of Rubio, meeting with him several times and administering various psychological tests. Further he was aware that Rubio's mother reported abusing alcohol during her pregnancy. ROA.2525. Trial counsel also hired Dr. Jim Owens, an Assistant Professor of Pediatrics and Neurology with the Baylor College of Medicine, who conducted both a neurological examination and a physical one. Dr. Owens reported that he did not observe any "dysmorphic features" in Rubio's face. And both the MRI and EEG conducted on Rubio uncovered no evidence of trauma or brain disease. *Id*. This lack of brain damage or injury was also supported by the State's neuropsychology expert at the competency hearing. *Id*. And trial counsel also retained Dr. Raphael Morris to review Dr. Owen's report "with an eye toward exploring the possibility of FASD" and who also knew of Rubio's prenatal exposure to alcohol. *Id*. Finally, trial counsel sought funding to retain yet another expert, Dr. Pablo Stewart to test for organic brain damage but the trial court denied additional funding. *Id*. at 2526.

The lower court conclusively found that "the record demonstrates that trial counsel's representation did not fall below an objective standard of reasonableness." ROA.2531. The court also cited to this Court's holding "that a trial attorney does not provide ineffective assistance by failing to investigate FASD when a 'qualified neuropsychologist . . . after extensive testing, concluded that [the defendant] had no brain damage.'" ROA.2532 (citing *Gonzales v. Stephens*, 606 F. App'x 767, 773 (5th Cir. 2015)). Also, the lower court credited the state habeas court's finding that, "at the time of Rubio's trial, 'the opinion of a medical doctor was necessary to make a diagnosis of FAS or FASD[:]'"

> Despite various experts assessing Rubio for brain damage, and at least one prepared to testify about the impact of the pre-natal alcohol abuse by Rubio's mother, no medical doctor had diagnosed FAS or FASD when Rubio's trial began.

ROA.2526.

Thus, the lower court considered all this evidence of trial counsel's investigation efforts under the deferential review required in federal habeas but found that Rubio did not meet his burden. ROA.2531–33. The court concluded:

> Given the information available to them, defense counsel's decisions regarding a FASD defense fell within the parameters of reasonable strategic decisions for defense counsel, and in no manner fell below objective standards of reasonableness.

ROA.2533. Rubio fails to demonstrate that this conclusion is debatable among jurists of reason.

### 2. The lower court also properly found that Rubio failed to demonstrate the prejudice prong.

Although the failure to demonstrate the first of *Strickland's* prongs is fatal to his IATC claim, Rubio also argues that he was prejudiced by counsel's actions. Mot. at 21–27. In support of his claim, Rubio explains FASD and argues that it would have explained Rubio's evidence of impaired functioning, brain damage, and mental health evidence. *Id.* at 22–25. He also relies upon a few lines of testimony during the state habeas hearing that the trial judge agreed that Rubio would have been given a term of life without parole if it was available. *Id.* at 22 (citing ROA.3563). And he argues that "the whole evidentiary picture would have changed" because" the substantial effect of FASDs on juries is well established." *Id.* at 26. To support that conclusion, he cites to *Rompilla*, 545 U.S. at 392; and a case from the Fourth Circuit.

But the Supreme Court has explained that the fact patterns of its IATC cases do not necessarily set the bar for a finding of prejudice. *Andrus v. Texas*, 590 U.S. 806, 823 n.6 (2020). Nevertheless, it is informative that Rubio's alleged mitigation evidence does not compare to the mitigating evidence the Court has found to be prejudicially omitted in his cited case. *Rompilla*, 545 U.S. at 378, 390–95 (2005) (evidence established that Rompilla was reared in a slum, quit school at sixteen, had a series of incarcerations, his mother drank during pregnancy, his father had a "vicious temper," Rompilla and his siblings "lived in terror," he and a brother were locked "in a small wire mesh dog pen that was filthy and excrement filled," their home had no indoor plumbing, and they slept in an attic with no heat).

The lower court found that Rubio failed to demonstrate that the TCCA's assessment of prejudice was incorrect, "much less that fairminded jurists could disagree that its decision conflicts with the applicable Supreme Court precedents." ROA.2533. First, the court noted that defense counsel put on extensive evidence of Rubio's mental health. ROA.2534. And while FASD evidence might have presented "some unique factors for the jury to consider," it would have only incremental

impact given the other mental health evidence. *Id*. The court also recognized the double-edged nature of this evidence. *Id*.

Second, the lower court relied on the "shocking nature of the crime," and cited multiple cases from this Court to support that analysis. *Id*. at 2535. Quoting the TCCA directly, the court held that the TCCA properly applied the law to the facts of this case:

> At all stages of the present matter, no party has ever contested, and no reasonable person could doubt, that this case involves the horrific killing of three children.

*Id*. (citing *Ex parte Rubio*, 2018 WL 2329302, at *3). Rubio again fails to demonstrate the lower court's determination is debatable among jurists of reason. A COA should be denied.

## C. Rubio fails to demonstrate that reasonable jurists would debate the lower court's application of deference under 28 U.S.C. §2254(d).

Rubio also asserts that he avoids § 2254(d) relitigation bar for two reasons, and the debatability of either is sufficient to certify an appeal. But initially Rubio takes on the way courts have interpreted 28 U.S.C. § 2254(d) as a standard of review. Mot. at 27. He asserts Section 2254(d) or what is commonly called AEDPA deference but has also been referred to as the relitigation bar applies when state courts deny claims on the

merits. Section 2254(d)(2) disables the relitigation bar if the state decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Mot. at 28. And "[t]he relitigation bar is disabled under § 2254(d)(1) when the state merits decision 'was contrary to, or involved an unreasonable application of, clearly established law, as determined by the Supreme Court of the United States.'" Mot. at 33.

The Director asserts this is a distinction without a difference. In either case if a state court has unreasonably determined the facts or the application of clearly established law, the state court decision is no longer owed deference. Whether the courts want to holistically review claims with deference or engage in a distinct two-step process is not mandated by the statute. And, this Court has held that for claims where the deference or relitigation bar is overcome, the *Brecht v. Abrahamson*, 507 U.S. 619 (1993), harmless error standard applies. *Wooten v. Lumpkin*, 113 F.4th 560, 567–68 (5th Cir. 2024). Wooten explains that for a federal court to grant habeas relief a petitioner must show that at least one claim "passes both the relitigation bar found in § 2254(d) and the *Brecht* harmless error test." *Id.* at 568 (citing *Brown v. Davenport*, 596 U.S. 118,

122 (2022) (noting that § 2254(d)'s relitigation bar and *Brecht* harmless error consult different legal materials). *Id*.

1. **The lower court properly determined the state courts did not make unreasonable factual determinations.**

Rubio argues that the state courts unreasonably determined the facts of his IATC claim such that under § 2254(d)(2) the relitigation bar is disabled. Mot. at 28–32. He also argues that the district court "failed to reach the issue, and the appeal should be certified for that reason alone. Mot at 28. But Rubio only challenges both courts failure to agree with him. He continues to insist that the courts unreasonably relied on the experts' failure to diagnose FASD because he argues "that such diagnosis was outside the scope of the referral questions." *Id*.

The lower court's failure to explicitly say that Rubio did not overcome § 2254(d)(2), is not a ground for granting a COA. As shown above, the court emphatically and categorically denied this IATC claim on both deficiency and prejudice grounds. But the court did not just rely on the evidence at trial that counsel had sought such a diagnosis. The court also found that Rubio failed to obtain an expert FASD diagnosis even at state habeas proceedings:

> In addition, even in the context of the 2013 Habeas
> Application, Rubio relied on three experts, but none of them
> conclusively diagnosed Rubio with FASD. At best, Dr. Adler
> diagnosed Rubio with Partial FAS–a condition that includes
> some features of FAS–but he also indicated that additional
> testing was necessary to confirm the diagnosis. In the end, the
> evidence on which Rubio relied before the state habeas court
> does not prove that Rubio could have presented a strong
> FASD defense.

ROA.2533. Rubio fails to address this point of the lower court's opinion.

Rubio's trial counsel "was entitled to formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies". ROA.2533 (citing *Richter*, 562 U.S. at 107). Thus, the lower court properly concluded that "[g]iven the information available to them" trial counsel made a reasonable strategic decision "regarding a FASD defense" that "in no manner fell below objective standards of reasonableness." *Id*. Finally, the court denied the IATC claim stating:

> Ultimately, Rubio has not established that the TCCA, when
> concluding that Rubio's counsel did not provide ineffective
> assistance of counsel with respect to a possible FASD defense,
> reached a conclusion that conflicts with applicable Supreme
> Court precedents. At the very least, Rubio fails to show that
> fairminded jurists could disagree on that point. As a result, he
> falls short of meeting his burden under AEDPA and is entitled
> to no relief on this claim.

ROA.2535. This statement leaves no doubt that the court found that Rubio failed to overcome the relitigation bar and presented an unmeritorious claim.

> **2.  The lower court also properly found that Rubio failed to demonstrate the state courts unreasonably applied clearly established federal law.**

The lower court also properly rejected Rubio's assertion that he has overcome 28 U.S.C. § 2254(d)(1) to achieve de novo review. Federal courts do not have to defer to state legal decisions that are "contrary to, or involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *Id*. But Rubio begins not with an alleged faulty application of law but a litany of complaints about the lower court's improper factual determinations. Mot. at 33–34. He also faults the lower court for relying on the unpublished opinion in *Gonzales v. Stephens*, 606 F. App'x 767, 772 (5th Cir. 2015), but shows no connection to the underlying state court decision. *Id*. at 34–35.

Finally, Rubio asserts that that the TCCA improperly applied a prejudice standard that was "contrary to" clearly established Supreme Court law. He argues that "instead of evaluating whether the deficiency

had a 'reasonable probability' of affecting the trial outcome," "the TCCA instead required Rubio to 'demonstrate[] that the result of his trial would have been different but for counsel's decision not to further investigate[.]'" Mot. at 35–36 (citing *Ex parte Rubio*, 2018 WL 2329302, at \*7.). Rubio argues that the district court's decision to rely on the TCCA's citation to *Strickland* is insufficient. Mot. at 36. He further rejects the lower court's contention that the preponderance of the evidence standard is "shorthand" for the "reasonable probability" standard. *Id*. And he cautions that such a holding creates a split with the Fourth, Sixth, and Ninth Circuits. *Id*.

But the lower court properly rejected Rubio's argument, finding it "unpersuasive." ROA.2533. As Rubio admits, "the TCCA decision cited the relevant section of *Strickland*." *Id*. (citing *Ex parte Rubio*, 2018 WL 2329302, at \*7; Mot. at 36. The lower court also relied on the fact that the TCCA adopted the state habeas court's recommendation that reiterated the "precise language from the Supreme Court." ROA.2533–34. To abrogate this holding, Rubio argues that *Wilson v. Sellers*, 584 U.S. 122, 125 (2018), prohibits the courts from "looking through" to another opinion. But Rubio overstates the power of *Wilson* especially in a case

where the TCCA's opinion explicitly adopts the state court findings. *Ex parte Rubio*, 2018 WL 2329302, at *4. Just as federal courts may adopt the findings of magistrates in support of judgment so can the TCCA rely on and adopt the findings and conclusions of the trial court. Rubio's citation to a "single sentence" in the state court opinion does not render the state court's decision an unreasonable application of clearly established law. ROA2534. Nor does it make the lower court's reliance upon the state court's determination debatable among reasoned jurists.

Further Rubio fails to show that he could establish prejudice but for the TCCA's "mistake." As discussed above, the FASD evidence is lessened by the quantity of mental health evidence that defense counsel put before the jury. This evidence is double-edged. And Rubio's crime was horrific. Thus, the lower court properly concluded as quoted above regarding Rubio's failure to overcome the relitgation bar of § 2254(d)(2), that Rubio failed to show that the TCCA in denying this FASD IATC claim, "reached a conclusion that conflicts with applicable Supreme Court precedents." ROA.2535. Thus, Rubio failed to meet his burden under AEDPA and "is entitled to no relief on this claim." *Id*. There is nothing debatable about

the lower court's determination of Rubio's IATC claim. A COA should be denied.

## III. Rubio Is Not Entitled to a COA On His Procedurally Defaulted IATC Claim that Counsel Failed to Investigate and Prepare for his Insanity Defense.

Rubio next combines two of his claims in the lower court into one ground here. Mot. at 43–58. As he notes, the district court chose to consider these claims together. Mot. at 43 n. 9. Thus, Rubio asserts that he received ineffective assistance of counsel regarding the guilt/innocence phase because trial counsel failed to adequately investigate and prepare his insanity defense. Mot. at 43. He also raises a claim that counsel was ineffective in failing to investigate and present Rubio's prison records. *Id.*

Oddly, Rubio asks for a COA first on the alleged underlying claim and then attacks the lower court's imposition of an undeniable procedural bar. But since claims disposed of on procedural grounds require "that jurists of reason would find it debatable whether the petition states a valid claim of a denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling," the lower court addresses both the default and the merits of the underlying claim together. *Slack*, 529 U.S. at 484. This

interwoven analysis is necessary because the ineffective assistance of state habeas counsel (IASHC) inquiry requires consideration of whether the underlying claim is substantial. ROA.2551. The Director will do so here as well.

### A. Rubio's IATC claim for failing to investigate and present an insanity defense regarding expert preparation is both defaulted and without merit.

Rubio faults trial counsel for failing to adequately investigate and prepare his insanity defense which he breaks down into two separate errors. Mot. at 43–56. He alleges that his trial attorneys misunderstood the legal standards for an insanity defense. And he claims that trial counsel failed to supply his experts with or to offer into evidence his TDCJ records. *Id.* But the lower court chose to address this second part of the claim with Rubio's claim seven which also related to Rubio's prison and jail records. ROA.2555, n.4. Both claims were raised in successive and abusive state writ proceedings. ROA.2535–37. And Rubio admitted the claims were defaulted. ROA.2537. Thus, the lower court held them to be defaulted and examined whether Rubio could demonstrate one of the exceptions.

Rubio argued that ineffective assistance of state habeas counsel (IASHC) excused his default under *Martinez v. Ryan*, 566 U.S. 1 (2012), *Id.* Under *Martinez*, "to succeed in establishing cause, the [inmate] must show (1) that his claim of ineffective assistance of counsel at trial is substantial–i.e., has some merit–and (2) that habeas counsel was ineffective in failing to present those claims in his first state habeas proceeding." *Garza v. Stephens*, 738 F.3d 669, 676 (5th Cir. 2013). Further, state habeas counsel cannot be ineffective for failing to raise a meritless claim. *Id.* And the Supreme Court qualified the extent of the *Martinez* exception in *Shinn v. Martinez Ramirez*, 596 U.S. 366 (2022). In *Martinez Ramirez*, the Court held that "under [28 U.S.C.] § 2254(e)(2), a federal habeas court may not conduct an evidentiary hearing or otherwise consider evidence beyond the state-court record based on ineffective assistance of state postconviction counsel." 596 U.S. at 381. That is because "under § 2254(e)(2), a prisoner is 'at fault' even when state postconviction counsel is negligent." *Id.* at 383. Therefore, "a federal court may order an evidentiary hearing or otherwise expand the state-court record only if the prisoner can satisfy § 2254(e)(2)'s stringent requirements." *Id.*

As such, Rubio must show that he presents a substantial underlying claim and demonstrate both *Strickland* prongs in regard to state habeas counsel's failure to raise the underlying claim. ROA.2550–51.

## 1. Deficient Performance

The lower court chose to address the alleged deficiency in trial counsel's conduct first. ROA.2551–55. Emphatically concluding that the record did not support Rubio's assertion that trial counsel misunderstood the correct standard or improperly prepared his expert witness for testifying, the court thoroughly discussed counsels' action throughout the trial. *Id*. The court reviewed the statutory definition of insanity. ROA.2551–52. And the court noted that trial counsel had the benefit of the TCCA's prior ruling that "provided guidance for trial counsel to fashion a defense in the second trial." ROA.2552.

Then the court went through all the phases of trial. "In voir dire, counsel discussed the insanity defense with the venire." ROA.2552. At trial, Rubio's attorneys properly questioned expert witnesses regarding the standard which the district court provided cited testimony. ROA.2553–54. Finally, the court concluded:

> Ultimately, the record demonstrates that Rubio's trial counsel understood the legal standard for an insanity defense under Texas law, and that they questioned witnesses and prepared experts based on this correct understanding. While Rubio presents instances in which the distinction between legally wrong and morally wrong became blurred, the overall picture remains clear. Rubio fails to show that his trial counsel's performance was deficient on this issue.

ROA.2555.

Yet Rubio continues to assert that trial counsel used the wrong standard. Mot. at 45–47. Citing to the portion regarding the TCCA's prior opinion, Rubio argues that the lower court merely found that "trial counsel should have known the right insanity standard." Mot. at 47. In fact, he asserts the lower court was "flatly wrong." *Id*. at 48. And he argues that, in the court below, the Director conceded that the experts used the wrong standard. *Id*. ("For example, the prosecutors argued to the jury in closing that Dr. Morris applied the incorrect standard and the Director conceded as much in the district court.") (citing ROA.2136.). The Director's actual concession was far more limited:

> And while Rubio correctly points out that Dr. Morris applied the wrong standard for insanity in his report, he fails to consider the fact that when pressed by the State, Dr. Morris maintained that he believed Rubio was suffering from paranoid schizophrenia and that he was insane when he committed the crimes–meaning that he did not know that his conduct was illegal. In fact, Dr. Morris put the correct

definition of insanity in his report, but in the opinion portion of his report, he used the words "morally wrong" instead of "legally wrong." On cross, Dr. Morris disagreed with Dr. Valverde's assertion that Rubio understood the consequences of his actions when he was committing the murders. Dr. Morris also testified that he would have amended his report to reflect this testimony weeks before trial, but it was his understanding that it was too late to make such an amendment.

ROA.2136 (internal citations omitted). But while Rubio continues to believe that the lower court's rejection of this claim was in error, he fails to demonstrate that reasoned jurists would.

### 2. Prejudice

Since the lower court thoroughly rejected that trial counsel was deficient, it spent less time considering prejudice. ROA.2555. Concluding that Rubio could not show that the failure prejudiced him, the court decided that Rubio has failed to demonstrate a meritorious claim. *Id.*

As the court found, the record regarding Rubio's insanity defense shows that there were statements on both standards. *Id.* Yet, he cannot demonstrate that "had the jury not heard the competing testimony based on a 'morally wrong' standard, it would have found him not guilty by reason of insanity." *Id.* The jury heard the correct standard and chose to reject it. The court clearly rejected Rubio's allegation "that not a single

defense expert testified that Rubio was insane under the elevated Texas standard." Mot. at 53. Thus, Rubio fails to show that but for a "few references" to an incorrect definition, the jury would have found him not guilty by reason of insanity.ROA.2555. Rubio again fails to demonstrate this conclusion is debatable among reasoned jurists.

### 3.   Procedural Default

The lower court recognized that both of Rubio's claims below were defaulted by his failure to properly raise them before the state courts. ROA. 2535–37. Rubio admits to the default but asserts the *Martinez* exception. Mot. at 56–57. But the district court rightly rejected Rubio's allegations and found he could not overcome the default. ROA.2556.

As demonstrated above, the lower court found that Rubio failed to demonstrate both *Strickland* prongs. This conclusion shows that Rubio's claim is without merit. A meritless claim cannot be a substantial one. Nevertheless, the court considered whether Rubio had shown that his state habeas counsel was deficient in failing to raise this claim. *Id*. It concluded he did not. Then the lower court discussed whether Rubio could prove that "a reasonable probability exists that the state habeas court would have granted the relief that Rubio seeks," but concluded that

"Rubio fails to make this showing." *Id*. As the court stated, "the controverted nature of the evidence on the issue of an insanity defense renders it highly unlikely that the habeas court would have agreed with Rubio on this claim." *Id*.

In response, Rubio relies on the fact that the claim was not raised during initial state habeas proceedings. Mot. at 56–58. Additionally, he cites to the affidavit from state habeas counsel purporting that he believed the claim was substantial and he had overlooked it. Mot. at 58. But it is not the duty of state habeas counsel to assess his own deficiencies. That is the province of the courts. Here the lower court found this IATC claim to be without merit and non-substantial. Rubio fails to demonstrate this conclusion is in error or even debatable. For all of these reasons, a COA should be denied.

**B.     Rubio's IATC claim for failing to investigate and present an insanity defense regarding record review is both defaulted and without merit.**

As part of his IATC claim, Rubio asserts counsel were ineffective for failing to investigate TDCJ records documenting his history of mental illness. Mot. at 50–58. This was presented as a separate claim in the lower court, but as explained the lower court grouped all the mental

health claims together. ROA.2536. This claim is also procedurally defaulted by Rubio's failure to include it in his initial state habeas appeal. ROA.2557.

### 1. Deficient Performance

Rubio argues that because mental health was the central trial issue, trial counsel "failed to investigate and present highly probative information documented in TDCJ and county jail records." Mot. at 50. He argues that the records "capture the progression of Rubio's mental illness," and "show that Rubio was heavily medicated for severe mental illness, and that he took antipsychotics including Thorazine (chlorpromazine) and Risperdal (risperidone), antidepressants Prozac (fluoxetine) and Wellbutrin (bupropion), and the antianxiety medication Vistaril (hydroxyzine)." *Id*. He also argues those same records reflect multiple reports of Rubio's hallucinations and delusions. *Id*. at 51. He believes these "readily available" records would have rebutted the State's expert "that Rubio neither experienced symptoms of, nor took medicine for, mental illness." *Id*.

In the court below, Rubio premised his argument that trial counsel failed to obtain the records in a timely manner and waited until the eve

of trial. ROA.1967–70; 2558. But this assertion was disproved by references to the record during Rubio's competency hearing which was four months before trial. ROA.2558. Since trial counsel clearly had and knew about the records his decision not to present them must have been a matter of trial strategy. This is supported by the records which also contain evidence that Rubio would not take his medication which the State could have used to rebut his assertions about Rubio being medicated. ROA.2558–59. The lower court also found that the State's expert would not have been completely undermined. The expert reviewed the records, researched, conducted interviews, and made his own analyses and evaluation. ROA.2559. Further the state's expert also interviewed the defendant. *Id*.

Against this backdrop, trial counsels' "decision to not utilize those documents with the jury falls within the type of reasonable strategic decisions of trial counsel." ROA.2560. And the lower court specifically held that "the prison records do not represent one-sided evidence in his favor." *Id*. Although the records provide "some information supporting the argument that Rubio suffered from a severe mental disease or defect," they also "contain information that controverts such an argument." *Id*.

Citing *Moore v. Johnson*, 194 F.3d 586, 617 (5th Cir. 1999), the lower court noted that courts have consistently rejected such claims if counsel conducted an adequate investigation and made an informed decision not to use the evidence. *Id*. Thus, the lower court again concluded that, "Rubio has failed to demonstrate that his trial counsel's handling of the prison records fell below an objective standard of reasonableness." *Id*.

Rubio now argues that the court's determination is debatable because the court's hypothetical reasons do not withstand scrutiny. Mot. at 52. But the court did not provide hypothetical reasoning. As demonstrated, the court found that counsel was aware of the records and had conducted an adequate investigation. ROA.2560. This is sufficient for the lower court to determine counsel was not deficient and deny this IATC claim on the merits. As shown below, Rubio also could not overcome the default. Rubio again fails to show any of these determinations are incorrect or even debatable among reasoned jurists. Rubio's request for a COA should be denied.

### 2.    Prejudice

Next, Rubio argues he was prejudiced by counsel's failure to investigate and present his prison records, because he asserts that the

State's expert testified falsely. Mot. at 55. This is raised as an independent claim and addressed below. Rubio also argues that the lower court improperly applied *Strickland*. *Id*. at 55–56. He argues the district court "refused to find prejudice because Rubio 'does not demonstrate that the prison records would have significantly shifted the balance of that evidence in the jury's mind.'" *Id*. Rubio now argues that this "framing" of the standard "is higher than what *Strickland* requires. *Id*. But even assuming that Rubio is correct in that assertion, he still cannot obtain a COA because of his failure to show that the district court's decision regarding deficiency is debatable as shown above. And because the claim is also defaulted as shown below.

But the lower court did not err in determining that Rubio could not show prejudice. ROA.2560–61. As the court found this would have been additional, competing evidence regarding Rubio's mental health and sanity. *Id*. at 2560. Rubio did "not demonstrate that the prison records would have significantly shifted the balance of that evidence in the jury's mind." *Id*.

Rubio fails to demonstrate that the lower court's resolution of this prong of *Strickland* is wrong. As shown next, this claim was also

defaulted. Thus, the lower court properly denied this claim. Rubio fails to show any of these rulings are debatable. A COA should be denied.

### 3. Procedural Default

The court below also reviewed state habeas counsel's performance to find whether Rubio could overcome the default of his claim. First, the court found it was "not surprising" that state habeas counsel would not advance this "imperfect" claim. ROA.2561. And the court concluded that Rubio failed to demonstrate "state habeas counsel's performance fell below an objective standard of reasonableness." *Id*. Similarly, Rubio did not prove "actual prejudice" from the failure to raise this claim on state habeas. *Id*. It also relied on its earlier analysis to deny Rubio's attempt to overcome the default. ROA.2561–62.

In denying Rubio's IATC claim regarding the investigation and presentation of TDJC records, the district court held that the prison records supported both sides of the insanity issue. ROA.2560. Rubio admits as much but attacks "the State's categorical trial position that Rubio (1) had no symptoms of mental illness and (2) was unmedicated during that time." Mot. at 56. He also asserts that the records "were not a net benefit for the State." *Id*. But Rubio misses the point. Even if the

record were not a "net benefit," they were of some benefit including as impeachment of Rubio's experts. This is why it was not error for trial counsel not to introduce them. As shown above, Rubio failed to prove that counsel was ineffective for failing to do so. The lower court correctly denied the claim and found it to be defaulted. Rubio fails to show these rulings are debatable among reasoned jurists. A COA should be denied.

## IV. Rubio Is Not Entitled to a COA On His Procedurally Defaulted *Napue* Claim.

In the court below, Rubio alleged a claim based on the prosecution eliciting false testimony from Dr. Michael Welner, the State's expert. Mot. at 58. Rubio now asks for a COA on this claim that Dr. Welner falsely testified: (1) that Rubio was not taking antipsychotic medications while incarcerated, and (2) that Rubio did not exhibit symptoms of psychosis before his second trial, and (3) the State relied extensively on Dr. Welner's testimony at both guilt and sentencing phases of the trial. Mot. at 58–66. Rubio first argues the merits of his claim and then attacks the lower court's ruling that his claim was defaulted. *Id*. The Director will follow the lower court's decision to address both together as they are intertwined.

As he admits, Rubio raised this claim in only his abusive state writ proceeding and it is defaulted. Mot. at 64. But, unlike the claims above, Rubio does not assert that the default can be cured by *Martinez*, instead he asserts the fundamental miscarriage of justice exception applies. Mot. at 65. This exception occurs when the petitioner "is 'actually innocent' of the offense underlying his conviction or 'actually innocent' of the death penalty.'" *Roberts v. Thaler*, 681 F.3d 597, 605 (5th Cir. 2012). Rubio asserts that, but for Dr. Welner's testimony, no reasonable juror would have found him sane, and thus, guilty, nor would he have been sentenced to death. Mot. at 65. But as discussed below, Dr. Welner's testimony was not false. And even putting aside Dr. Welner's alleged misrepresentations, Rubio is unable to show that he is actually innocent of murdering and decapitating three children. Thus, this claim is procedurally defaulted.

First in addressing Rubio's default the lower court recognized that, "'the actual innocence excuse for procedural default requires factual innocence, not mere legal insufficiency.'" ROA.2571 (citing *McGee v. Lumpkin*, No. 22-10188, 2022 WL 18935854, at *1 (5th Cir. Sept. 8, 2022) (cleaned up) (quoting *Bousley v. U.S.*, 523 U.S. 614, 623 (1998)). Then the

court noted that the law does not clearly enable petitioners to overcome procedural default by arguing that absent a constitutional error, the jury would have found the petitioner not guilty by reason of insanity ("NGBRI"). ROA.2573. A petitioner who presents a NGBRI defense is not factually innocent as this is an affirmative defense, which concerns legal, rather than factual innocence. Further, this Court is currently considering this issue en banc. *Crawford v. Cain*, 68 F.4th 273, 289 (5th Cir.), reh'g en banc granted, opinion vacated, 72 F.4th 109 (5th Cir. 2023). That decision may preclude Rubio's argument. But even assuming Rubio's position is correct, the lower court found that the default still applied. ROA. 2573–74.

The court also rejected Rubio's contention that he is actually innocent of the death penalty. ROA.2575. Quoting *Rocha v. Thaler*, 619 F.3d 387, 405 (5th Cir.), the court held that Rubio failed to "'negate' his very *eligibility*" for the death penalty." (emphasis in original); ROA. 2575. The court leaned into the fact that Rubio "shows no error of any kind concerning the challenged statement by Dr. Welner." ROA.2575. This is fatal to Rubio's argument that he is entitled to the fundamental-miscarriage-of-justice exception to the procedural bar. *Id*.

Despite Rubio's claim clearly being defaulted, the lower court also properly determined the claim lacked merit. In *Napue*, the Supreme Court held that it is a violation of the Fourteenth Amendment for the prosecution to knowingly use perjured testimony. A conviction must be set aside where the petitioner has demonstrated that: (1) a witness gave false testimony; (2) the falsity was material; and (3) the prosecution used the testimony knowing it was false. *Reed v. Quarterman*, 504 F.3d 465, 473 (5th Cir. 2007). False evidence is deemed material for this analysis "if there is any reasonable likelihood that [it] could have affected the jury's verdict." *Giglio v. United States*, 405 U.S. 150, 153–54 (1972). This Court has held that "[t]o obtain relief on his claim that the [S]tate knowingly introduced false testimony, [the petitioner] bears the burden of establishing that the evidence was false, that the false testimony was material, and that the prosecution offered the testimony knowing it to be false." *Chambers v. Johnson*, 218 F.3d 360, 363–64 (5th Cir. 2000) (as modified on rehearing). But as the lower court found, Rubio fails to demonstrate "any false testimony." ROA.2574.

The State called Dr. Welner to rebut Rubio's insanity defense. But Rubio contends that Dr. Welner testified falsely that Rubio was not on

antipsychotic medication for the "great majority" of time between his arrest and the 2010 trial. Mot. at 59. He also asserts that Welner's testimony that Rubio exhibited no symptoms of psychosis during that time was false. *Id*. Thus Dr. Welner testified to his opinion that Rubio could not have been psychotic because a psychotic person who lived in prison and lacked medication would exhibit symptoms of psychosis." *Id*. at 59–60 (citing ROA.23257–60). Rubio argues that his own TDCJ records rebut this testimony and prove that it was false. Mot. at 60–62. Thus, Rubio argues that "reasonable jurists could debate the district court's finding of non-falsity." *Id*. at 62.

The Director asserts that is not the case. The lower court acknowledged that "doctors prescribed Rubio medications when he was incarcerated, and that he exhibited some symptoms of mental illness." ROA.2574. But "the record also contains controverting evidence, including that Rubio refused to take the medications, and that Rubio feigned symptoms of mental illness." *Id*. (citing to record). The court details multiple examples of Rubio's refusal to take medication including the testimony of one of his experts. *Id*. Thus, the court concluded that Dr. Welner's testimony was based on valid evidence. And although he could

be impeached with Rubio's proffered records, that dispute is "left to the jury to determine what weight to ascribe to Dr. Welner's statements." *Id*. at 2574–75. The court also held that the alleged false testimony was not material but did not address the State's knowledge since the testimony was not false. ROA.2575.

Because of this–along with the overwhelming evidence of Rubio's guilt, the cruelty of the crime, and all the other aggravating factors– Rubio is unable to make any meaningful materiality argument concerning either guilt-innocence or punishment. That is, Rubio is unable to show "any reasonable likelihood" that Dr. Welner's testimony concerning his lack of anti-psychotic medication while incarcerated, coupled with the testimony that Rubio was not exhibiting any psychotic symptoms, "could have affected the jury's verdict." *Giglio*, 405 U.S. at 153–54. Thus, his claim fails on the merits in addition to being unexhausted and procedurally defaulted.

## CONCLUSION

Rubio does not show that reasonable jurists would debate the resolution of the issues, nor does he show that any of them deserve additional consideration. His COA request should therefore be denied.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

JOSH RENO
Deputy Attorney General for
Criminal Justice

EDWARD L. MARSHALL
Chief, Criminal Appeals Division

s/ Ellen Stewart-Klein
ELLEN STEWART-KLEIN
Assistant Attorney General
State Bar No. 24028011
*Counsel of Record*

OFFICE OF THE ATTORNEY GENERAL
   OF TEXAS
Post Office Box 12548, Capitol Station
Austin, Texas 78711-2548
Tel.:(512) 936-1400
Fax:(512) 936-1280
Email:*Ellen.Stewart-
Klein@oag.texas.gov*
*Attorneys for Respondent–Appellee*

# CERTIFICATE OF SERVICE

I do hereby certify that on December 9, 2024, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit using the electronic case-filing system of the Court. The electronic case-filing system sent a "Notice of Electronic Filing" to the following attorney of record, who consented in writing to accept this notice as service of this document by electronic means:

Lee Kovarsky
Phillips Black, Inc.
727 E. Dean Keeton Street
Austin, Texas 78705
l.kovarsky@phillipsblack.org

Jeremy Schepers
Supervisor, Capital Habeas Unit
jeremy_schepers@fd.org
Derek VerHagen
Assistant Federal Public Defender
derek_verhagen@fd.org
Claire Davis
Assistant Federal Public Defender
claire_davis@fd.org

Office of the Federal Public Defender
Northern District of Texas
525 South Griffin Street, Ste. 629
Dallas, Texas 75202

s/ Ellen Stewart-Klein
ELLEN STEWART-KLEIN
Assistant Attorney General

## CERTIFICATE OF COMPLIANCE

This brief complies with Rule 32(a)(7)(C) of the Federal Rules of Appellate Procedure. It contains 9,543 words, Microsoft Word 2013, Century Schoolbook, 14 points.

s/ Ellen Stewart-Klein
ELLEN STEWART-KLEIN
Assistant Attorney General


## ELECTRONIC CASE FILING CERTIFICATIONS

I do hereby certify that: (1) all required privacy redactions have been made; (2) this electronic submission is an exact copy of the paper document; and (3) this document has been scanned using the most recent version of a commercial virus scanning program and is free of viruses.

s/ Ellen Stewart-Klein
ELLEN STEWART-KLEIN
Assistant Attorney General